IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JACOB SEDABRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:24-cv-02402-SMY-RJD |
| v. | ) | |
| | ) | |
| WORLD WIDE TECHNOLOGY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM and ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on the First Motion to Compel (Doc. 33) filed by Plaintiff Jacob Sedabres.[1] For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

Background

Plaintiff Jacob Sedabres filed this action against Defendant World Wide Technology, LLC ("WWT"), alleging employment discrimination based on race and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and state law. Discovery in this case was originally due on November 21, 2025. (Doc. 20). Plaintiff served his written discovery on May 12, 2025. (Doc. 33, p. 1). On August 11, 2025, Defendant served unverified objections-only responses to the interrogatories and substantive responses to the requests for production, including 790 pages of documents. (Doc. 33, p. 1; Doc. 33-1; Doc. 37). On October  6, 2025, the discovery deadline was extended through March 24,

---

[1] Chief District Judge Staci M. Yandle referred the disposition of the motion to the undersigned. (Doc. 41).

2026. (Doc. 24). On November 11, 2025, Defendant served verified, supplemental interrogatory answers together with its first Electronically Stored Information ("ESI") production. (Doc. 33-2). Defendant supplemented its ESI production again on or about November 18, 2025, and on April 20, 2026. (Doc. 33, p. 1). On December 2, 2025, the Court entered an agreed Protective Order addressing confidentiality. (Doc. 26).

On March 12, 2026, Defendant moved for a motion to compel Plaintiff's deposition, which was thereafter denied as moot due to the parties' agreement to resolve this issue amicably. (Docs. 27, 29 & 32). The parties further jointly moved for an extension of the pretrial deadlines and the trial setting. Presiding Chief Judge Staci M. Yandle granted an extension of the discovery deadline through April 30, 2026, denied resetting of the trial schedule, and advised the parties that no further extension of pretrial deadlines would be granted. (Doc. 32). Plaintiff was deposed on April 16, 2026. (Doc. 35). Between April 22, 2026, and April 28, 2026, Plaintiff deposed Defendant's HR corporate representative, Michael Gallagher, and fact witnesses Keenan Pearson, Mark Jones, Greg Piper, and Pat Nelke.

On April 30, 2026, the deadline for completion of discovery, Plaintiff filed this pending motion. (Doc. 33). Plaintiff represents that the recent depositions revealed the existence of a plethora of responsive documents which Defendant allegedly failed to produce. Plaintiff further sought to strike Defendant's boilerplate objections. Defendant opposed the motion, arguing, *inter alia*, that it has already addressed the issues that were actually brought to its attention before the filing of the motion, and that Plaintiff did not satisfy his meet and confer obligation on the remaining issues. (Doc. 37).

## Legal Standard

A party may move to compel under Federal Rule of Civil Procedure 37 when an opposing party fails to respond to a discovery request or provides an inadequate response. Fed. R. Civ. P. 37(a). Courts have broad discretion in ruling on a motion to compel and may apply the discovery rules liberally. *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018). Under Rule 26(b)(1), the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Communications Corp.,* 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter"). However, discovery is not limited to evidence admissible at trial. Fed. R. Civ. P. 26(b)(1). Rather, information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). Still, "relevance alone does not translate into automatic discoverability." *Motorola*, 365 F. Supp. 3d at 924. Discovery must also be proportional to the needs of the case, considering the importance of the issues, the amount in controversy, access to information, the parties' resources, the value of the discovery, and whether the burden outweighs the benefit. Fed. R. Civ. P. 26(b)(1). Once the movant makes a prima facie showing of relevance and proportionality, the burden shifts to the party resisting discovery to show why discovery should be disallowed. *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002).

## Discussion

### A. Preliminary Matters

Before proceeding on the merits of the motion, the undersigned must address two preliminary matters: the timeliness of the pending motion and Plaintiff's compliance with the meet

and confer obligation under Federal Rule of Civil Procedure 37(a)(1) and Local Rule SDIL-LR 26.1(c).

### a.  Timeliness of the Motion to Compel

Although the parties did not discuss the timeliness of the pending motion in their filings, the undersigned deems it necessary to address it sua sponte. District courts may, in their discretion, deny discovery motions that have been filed within the discovery period as untimely "where there has been unexplained or undue delay or when the late motion will require an extension of the discovery period." *Feit Elec. Co. v. CFL Techs., LLC*, No. 13 09339, 2025 WL 2987084, at *3 (N.D. Ill. Oct. 22, 2025) (citing *LG Elecs. v. Whirlpool Corp.*, 2009 WL 3294802, at *2 (N.D. Ill. June 22, 2009). The court must consider "the entire complex circumstances that give rise to the motion," including the length of and justification for the delay. *Id.* (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005). An untimely motion to compel may be excused where the moving party provides a "reasonable and persuasive justification." *Id.* (citing *Signal Fin. Holdings LLC*, No. 17 C 8816, 2021 WL 4940865, at *5 (N.D. Ill. June 10, 2021), *aff'd,* No. 17 C 8816, 2021 WL 4935163 (N.D. Ill. July 30, 2021).

Here, Plaintiff did not file the motion until April 30, 2026, the final day of the extended discovery cut-off. Granting Plaintiff's motion would require extension of the discovery deadline, which Chief Judge Yandle previously warned the parties would not be allowed. Plaintiff's counsel states in a declaration submitted in support of the motion that the existence of the documents that are the subject matter of this dispute was not disclosed until after the depositions that took place in the week immediately preceding the extended discovery cut-off. (Doc. 35). While this explains the delayed filing of the motion, it does not justify the delay in scheduling the depositions in the first place. Nonetheless, in light of the extensive discovery in which the parties have engaged over

the last month, the undersigned finds that the delayed filing of the motion is justified and excused but only as to material whose existence was not discovered until the recent depositions. For clarity and economy, the timeliness issue is addressed for each specific part of the motion in the discussion of the merits, when applicable.

### b. Meet and Confer Obligation

Defendant argues in its response that Plaintiff only partially satisfied the meet and confer requirement. In his declaration, Plaintiff's counsel set forth the attempts to meet and confer with Defense counsel and further certified compliance with Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(c). While Defendant offered relevant electronic correspondence exchanged between the parties, he did not specifically identify within the response the specific issues on which Plaintiff failed to meet and confer prior to filing this motion. The undersigned will not parse through the parties' correspondence to discern those parts. Accordingly, the Court finds that Plaintiff has satisfied the meet and confer obligation under Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(c).

### B. Merits

### a. Defendant's General Objections and Boilerplate

Plaintiff first seeks to strike Defendant's boilerplate objections in its RFP Responses (Doc. 33-1) and its Verified Supplemental Interrogatory Answers (Doc. 33-2), including seven "General Objections," and the objection raised on each specific interrogatory and request for production. Defendant counters that Plaintiff's argument is insufficient to the extent it seeks to strike all the objections, and unsupported as to the specific objections raised in response to its specific discovery request. (Doc. 37, pp. 3-4). Plaintiff, who has received Defendants' discovery objections since at

least November 11, 2025, does not provide any justification for not moving to have the boilerplate objection stricken before the discovery cut-off day. Accordingly, this request is denied as untimely.

### b. Personnel Files of Candace Adams, Pebbles McGuire, Myron Chapman, and Mark Jones

Plaintiff next moves to compel production of the personnel files of Candace Adams (RFP No. 2) and Pebbles McGuire, Myron Chapman, and Mark Jones (RFP No. 3). Defendant argued the requests were overbroad and were seeking irrelevant information as to non-parties. In its response, Defendant reiterated its objections but nonetheless represented that it had since produced the requested documents. Accordingly, the motion to compel is **DENIED** as moot as to RFP Nos. 2 & No. 3.

### c. The "ER Investigations Log" Spreadsheet

Plaintiff also seeks production of a document titled "ER Investigations Log" in native format with metadata preserved, subject to the Protective Order. Plaintiff argues that, based on the deposition testimony of Defendant's HR corporate representative, Michael Gallagher, this is an Employee Relations spreadsheet in which Defendant tracks complaints of discrimination and retaliation. Further, an email chain between Defendant's employees that was included in Defendant's production ("DEF001346"), references the log as follows: "I reviewed the ER Investigations Log and this was captured for Jacob: Date of Complaint, 01/03/24; *Jacob claims his former Manager, Candace Adams discriminated against him based on his race.*" (Doc. 37-6, pp. 1-2). Plaintiff argues Defendant did not produce the log despite being responsive to Interrogatories Nos. 4, 6, and 16, and to RFP Nos. 11, 22, and 24.

First, this request is timely since Plaintiff did not become aware of the existence of the requested material until Gallagher's deposition on April 28, 2026. Further, the ER Investigations

Log is subject to production under Plaintiff's RFP No. 11. That request sought "[a]ll documents and ESI from each repository or source identified in response to Interrogatory No. 16 containing communications or information related to Plaintiff or his complaints of racial favoritism, discrimination, or retaliation." (Doc. 33-1, pp. 7-8). In turn, Interrogatory No. 16 asked Defendant to "[i]dentify all repositories or sources of [ESI] containing communications or information related to Plaintiff or his complaints of racial favoritism, discrimination, or retaliation, including but not limited to email accounts, messaging platforms, and document storage systems, and for each repository, state the custodian, retention policy, and type of information stored." (Doc. 33-2, pp. 16-17). Because the ER Investigation Log is an ESI that appears to contain "information related to Plaintiff or his complaints of racial . . . discrimination," its storage location falls within the scope of Interrogatory No. 16. Further, the log itself, being an ESI stored within that source and containing information related to Plaintiff's complaints of racial discrimination, is responsive to RFP No. 11. Accordingly, the ER Investigation Log is subject to production under RFP No. 11.

Subject to several objections, Defendant's discovery response identified the following repositories or sources of ESI: an email server for its employees, Microsoft Teams instant messaging platform, an electronic platform for job applications, and ADP as its HRIS to store personnel and payroll records. (Doc. 33-2, pp. 16-17). In response to RFP No. 11, Defendant raised several objections, including that the request was "overly broad and unduly burdensome in temporal scope, scope of information requested, and scope of custodians potentially encompassed" and as "seeking much information that is not relevant, reasonably calculated to lead to the discovery of admissible evidence, or proportional to the needs of the case; and to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine." (Doc. 33-1, pp. 7-8). Defendant did not state that it withheld any material on objection grounds. In its response

to the motion, Defendant does not dispute that it did not produce the log. Rather, it raises confidentiality concerns regarding "150 other confidential, sensitive complaints" listed in the log that it alleges are irrelevant to this case. It further argues that Plaintiff does not explain how he will obtain relevant information from those third-party complaints. Plaintiff, on the other hand, argues that the confidentiality order in place addresses any confidentiality concerns of third parties.

Defendant's relevance objection lacks merit. The fact that a responsive document contains both relevant and irrelevant or "non-responsive information" does not render it non-discoverable. *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 7260797, at *3 (N.D. Ill. Dec. 10, 2020) (citing *Bell v. Pension Comm. of ATH Co., LLC*, 330 F.R.D. 517, 522 (S.D. Ind. 2018)). Here, based on the email chain between Defendant's employees that has already been produced, the ER Investigative Log appears to contain information regarding the exact race discrimination complaint that Plaintiff is pursuing in this case. As such, the document is relevant.

Likewise, Defendant has not carried its burden to show that discovery should be disallowed on grounds of confidentiality. When evaluating a request for production of personnel records, '[t]he court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truth-seeking function' in the particular case before the court." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). The Seventh Circuit has recognized that there is a "privacy interest in personnel and employment files." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 257 (S.D. Ind. 2002) (citing *Gehring v. Case Corp.,* 43 F.3d 340, 342 (7th Cir. 1994). Nonetheless, personnel records "are not sacrosanct" and are often subject to discovery in discrimination cases. *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 625

(N.D. Ill. 2016). Of course, a responsive party may redact sensitive information such as "unlisted addresses and telephone numbers, marital status and information regarding children, social security numbers, wage information, medical and health insurance information, criminal history, credit information, and information regarding work problems unrelated to the plaintiff's claims." *Vukadinovich v. Griffith Pub. Schs.*, No. 2:02 CV 472, 2008 WL 5141388, at *9 (N.D. Ind. Dec. 5, 2008) (citing *Ezell v. Potter,* No. 2:01 CV 637, 2006 WL 1094558 at *2 (N.D. Ind. March 16, 2006) (internal citations omitted)). Any "privacy concerns over production of personnel files are "a proper basis to seek a protective order under Rule 26, not to foreclose discovery"). *Bouwkamp v. CSX Corp.*, No. 2:05 CV 226, 2007 WL 129033, at *3 (N.D. Ind. Jan. 12, 2007).

Here, Defendant alleges that the ER Investigation Log contains information about "150 other confidential, sensitive complaints" that are not relevant to this case. However, Defendant's conclusory labeling of this information as confidential or sensitive is insufficient to establish the need for protection. *See Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (noting that when a discovery request appears relevant, "the party resisting the request bears the burden of showing it is improper"). As Plaintiff points out, any confidentiality concerns are addressed under the Protective Order in place. Accordingly, **within fourteen (14) days from this Order**, Defendant shall produce, subject to the Protective Order, the spreadsheet titled "ER Investigations Log" in native format with metadata preserved, and with any sensitive information redacted. Defendant shall also produce a log adequately explaining any redactions of sensitive information.

### d. Handwritten Meeting Notes and Roundtable Post-It Notes

Plaintiff further seeks an order requiring Defendant, after a reasonable search by Gallagher, Morrison, Piper, Roberts, Handy, and Pearson, to produce all responsive handwritten notes and

post-it notes within fourteen (14) days, or to certify in writing the custodians and locations searched and that no further responsive notes exist. He represents that those documents are responsive to RFP Nos. 15, 28, 29, 30, 34, 41, 42, and 46, which Defendant does not dispute. Plaintiff questions the thoroughness of Defendant's search and production of responsive documents, based on the deposition testimony of Gallagher and Pearson indicating the existence of handwritten notes that have not yet been produced. Defendant counters that Plaintiff misrepresents those testimonies. In any case, Defendant has agreed to ask those individuals to search their records for any handwritten notes and produce them within 14 days of the date of the Response. Accordingly, **within fourteen (14) days from this Order**, Defendant is directed to produce all handwritten meeting notes and roundtable post-it notes responsive to RFP Nos. 15, 28, 29, 30, 34, 41, 42, and 46 or to certify in writing the custodians and locations searched and that no further responsive notes exist.

### e.    Round-Table Training and Qualtrics Survey

Plaintiff also asks for any Round-Table Training documents and communications (RFP No. 46) as well as Qualtrics Survey Material (RFP No. 50), which he argues led to Plaintiff's discipline following the November 2023 review.

### i.    Round-Table Meeting Training Material

Plaintiff argues that Round-Table Training documents and communications are responsive to RFP No. 46. This request asks for "[a]ll documents and communications related to the round table conversation referenced in paragraph 27 of the Complaint regarding understaffing concerns, including but not limited to meeting notices, agendas, notes, minutes, attendee lists, and follow-up communications." (Doc. 33-1, p. 22). Defendant argues that those documents do not fall within the scope of RFP No. 46 and further points to Pearson's deposition, indicating that such documents do not exist. (Doc. 37, p. 7; Doc. 37-8, p. 7).

Irrespective of the existence of those documents, the Court agrees with Defendant that they are not responsive to RFP No. 46, under its ordinary reading. While any training material on how to conduct round-table meetings are documents related to round-table meetings in general, Plaintiff's request has used qualifiers (specifically as to conversations referenced in paragraph 27 of the Complaint regarding understaffing concerns) and a list of documents (meeting notices, agendas, notes, minutes, attendee lists, and follow-up communications) that conceptually limit the scope of the request to the documents and communications relevant only to specific roundtable conversations. Plaintiff's proposed reading would render the request vague as well as overbroad and unduly burdensome, objections that Defendant already raised in his response. (Doc. 33-1, pp. 22 -23). Accordingly, Plaintiff's request for production of Round-Table Training documents and communications is **DENIED**.

### ii.  Qualtrics Survey Material

Plaintiff also seeks "Qualtrics question set, responses w[]ere available, and scoring rubric" as well as "the Qualtrics responses tied to Plaintiff's evaluation." (Doc. 33, p. 6). He argues they are responsive to RFP No. 50, which seeks "[a]ll documents and communications related to any workplace climate or employee satisfaction surveys conducted at Defendant's Edwardsville, IL facility from January 1, 2022, through March 31, 2024." (Doc. 30-1, p. 25). Defendant counters that it has already produced several iterations of Plaintiff's compiled survey data, as well as for the other leaders reporting up to Pat Nelke, the question set, which also makes the "scoring rubric" obvious, and all of the data that was available to Plaintiff and his managers from the Qualtrics survey. Plaintiff confirms in his motion that Defendant had already produced an Excel rate-and-rank reflecting Plaintiff's score, but argues that he cannot meaningfully evaluate that document without the additional information.

The undersigned finds that this request is untimely. Plaintiff does not explain in his motion why he could not have moved for production of those documents earlier, especially given the fact that he was in possession of the Excel rate-and-rank reflecting Plaintiff's scores. Even assuming, *arguendo*, that the request was timely, the undersigned is not convinced that the individual responses to the survey—the only material from this category that appears to remain at issue—are in Defendant's custody, possession, or control.

Rule 34 provides for the production of documents, ESI, and tangible things that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). It is well settled that actual physical possession of the material is not required so long as the responding party has a legal right to obtain it. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 838–39 (7th Cir. 2014) (citing *Dexia Credit Local v. Rogan,* 231 F.R.D. 538, 542 (N.D.Ill. 2004)). When "a party has a contractual right to obtain documentation, courts have routinely found that the party has a legal right of control over the document and must produce it." *Indiana GRQ, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. 3:21-CV-227-DRL-MGG, 2022 WL 2302298, at *5 (N.D. Ind. June 27, 2022) (collecting relevant case law). However, the burden is on the moving party to establish that the party from whom discovery is sought has control of the requested documents. *Sparks Tune–Up Centers, Inc. v. Panchevre*, No. 90 C 4369, 1991 WL 101667, at *3 (June 4, 1991); *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019).

Here, Defendant points to the deposition testimonies of Piper, Pearson, Jones, and Nelke, which show that the survey at issue is anonymous, and it is run by an external company called Qualtrics. Qualtrics collects the data and sends compiled responses back to the supervisor who is the subject of the survey. The individual response data is not shared with the subject supervisor or

any other leaders in his or her reporting chain. Plaintiff, who carries the burden of proof, has failed to offer any evidence to show that Qualtrics individual responses are in Defendant's possession, custody, and control. Accordingly, Plaintiff's request for production of the Qualtrics Survey Material is **DENIED**.

### f.  ESI

Next, Plaintiff seeks the production of three discrete categories of ESI, each of which is addressed in turn.

### i.  Adams's email account, Microsoft Teams account, and personal/network folder

Plaintiff argues that Defendant has not confirmed whether Candace Adams's email account, Microsoft Teams account, and personal/network folder were collected and searched. He argues that the requested material is responsive to Interrogatory No. 16. Plaintiff does not tie this request to any information that accrued during the recent depositions. He further provides no other justification for his failure to move to compel production of those documents before the close of discovery. Accordingly, this request is denied as untimely.

### ii.  Plaintiff and Adams's Folders in Piper's Possession

Plaintiff next argues that Piper testified ambiguously about whether he maintained and/or produced "the Plaintiff folder and Adams folder he may maintained." (Doc. 33, p. 7). In his declaration, Plaintiff's counsel attested that the "depositions confirmed the existence" of several documents, including "custodial folders maintained by Mr. Piper for Ms. Adams (outlook folder, estimated 10 emails) and potentially for Plaintiff." (Doc. 35, p. 4). Defendant countered that the discovery requests do not require Defendant to produce emails maintained by Piper regarding Adams. The undersigned disagrees. Any ESI contained in custodial folders maintained by Piper

for Adams or Plaintiff is subject to identification under Interrogatory 16 and to production under

RFP 11 to the extent that they contain communications or information related to Plaintiff or his

complaints of racial favoritism, discrimination, or retaliation. Accordingly, **within fourteen (14)**

**days from this Order**, Defendant shall identify and produce any ESI contained in custodial folders

maintained by Piper for Adams and Plaintiff, in native format, or certify under oath that the folders

do not exist or have been searched and produced in full.

### iii.   Complete Native Teams threads between Pearson and each of (a) Piper, (b) Gallagher, (c) Plaintiff, and (d) Adams

Plaintiff requested Complete Native Teams threads, with metadata preserved, between

Pearson and each of (a) Piper, (b) Gallagher, (c) Plaintiff, and (d) Adams for the period September

1, 2023, through March 24, 2024, as being responsive to RFP 11, 12, 14, and 15. Defendant has

agreed to re-review Pearson's Teams data for the relevant time period with the requested

custodians. Accordingly, Plaintiff's request as to those accounts is **GRANTED**. To the extent not

already produced, Defendant's supplement is **due fourteen (14) days from this Order**.

### g.   Logistics Receiving Performance Metrics: Dock-to-Stock, SLA Retainment, and KPI Reports

Plaintiff next seeks production of the following metrics, which Nelke testified that

Defendant uses for the evaluation of the Logistics Receiving business unit:  (a) Dock-to-Stock, (b)

SLA Retainment, and (c) other Key Performance Indicators ("KPI") reports (broken down by

department where so maintained) for the period March 1, 2023, through March 31, 2024. Plaintiff

represents that these requests are responsive to Interrogatories Nos. 2 and 3 and to RFP Nos. 18

and 19. They generally seek information and material relating to "metrics, standards, criteria, or

data points " which Defendant used to evaluate Plaintiff's performance. (Doc. 33-1, pp. 12-13;

Doc. 33-2, pp. 3-4). Defendant raises relevance and confidentiality objections.

Plaintiff argues that the requested metrics are relevant because they show that Defendant's performance concerns documented in the November 2023 review and February 9–10, 2024 letter of expectations were pretextual. Defendant counters that Plaintiff's termination was due to "insubordination" and that any performance concerns documented in the Letter of Expectations had nothing to do with the requested metrics. *See* Exhibit 11, Letter of Expectations. The undersigned disagrees. While the metrics are not explicitly referenced in the Letter of Expectations, "business knowledge" and "goal settings" are included in the areas of concern. Accordingly, any metrics related to Plaintiff's performance are relevant. (Doc. 37-11, p. 1).

Further, Defendant claims that the request should be denied on confidentiality grounds because it "seeks over a year's worth of sensitive, proprietary information about Defendant's core business operations at the warehouse." However, Defendant, who carries the burden of showing that discovery should be disallowed, has not set forth any evidence showing the sensitive nature of the requested material. *See Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) ("unsupported statements of lawyers in briefs are not evidence, do not count, and are given no weight"). Moreover, Defendant does not explain why any confidentiality concerns are not addressed under the Protective Order. Accordingly, Plaintiff's request is **GRANTED. Within fourteen (14) days from this Order**, Defendants shall produce the following: (a) Dock-to-Stock, (b) SLA Retainment, and (c) other Key Performance Indicators ("KPI") reports for the Logistics Receiving business unit (broken down by department where so maintained) for the period March 1, 2023, through March 31, 2024.

### h. Native Format with Metadata for Communications Regarding Plaintiff's Evaluations, Performance, Discipline

Finally, Plaintiff asks for an order directing Defendant (a) to produce in native format, with metadata preserved, the Excel rate-and-rank spreadsheet (and any prior versions, drafts, or copies) referenced at DEF000645 and DEF001317; (b) to produce in native format any communications between or among Adams, Pearson, Piper, and Gallagher regarding Plaintiff's race, racial favoritism, or his complaints; and (c) to re-produce in native format any document already produced as a screenshot of an electronic original. Defendant counters that both parties submitted their document productions in PDF format and that there is no ground for requiring reproduction of almost 1,600 pages in a different format. Plaintiff neither ties this request to any of the information obtained during the recent depositions nor provides any other justification for not seeking to compel reproduction in native format before the close of discovery. Further, requiring Defendant to reproduce nearly its entire written discovery on the eve of trial in a different format would be overly burdensome and cause undue delay. Accordingly, Plaintiff's request is **DENIED**.

### Conclusion

For the foregoing reasons, the First Motion to Compel (Doc. 33) filed by Plaintiff Jacob Sedabres is **GRANTED in part and DENIED in part**. Defendant's supplemental production is due fourteen (14) days from this Order.

**IT IS SO ORDERED.**

**DATED: June 15, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**